ARTHUR A. COCKE AND WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 809. Decided November 24, 1926.

*Arthur A. Cocke, Esq.*, for the petitioners.
*B. H. Saunders, Esq.*, for the respondent.

The deficiencies involved in this proceeding are, in the case of each of the petitioners, income taxes for the year 1922 in the sum of $3,492.19. The petitioners are husband and wife, residing in Texas. The income involved herein was reported, and treated by the Commissioner, as community income.

The petitioners allege eight errors in the computation of the net income:

(1) The inclusion in net income of the amount of $82,500, which it is alleged never became income to either.

(2) The disallowance of a deduction of $6,191.90, the amount of loss which it is alleged resulted from the surrender of 71½ contracts in the United Home Builders of America.

(3) The disallowance of a deduction of $5,707.30, the amount of an alleged loss arising from an investment in the White Banking System.

(4) The disallowance of a deduction of $5,910, claimed as interest accrued in 1922.

(5) The disallowance of a deduction of $1,734.30, being the amount of taxes which it is alleged accrued upon a certain warehouse property prior to its acquisition by the petitioners. This item the Commissioner treated as a capital expenditure, treating it as a part of the cost of property purchased.

(6) The disallowance of a deduction for taxes in an amount not stated in the petition, which it is alleged accrued after the acquisition of said warehouse property in 1922.

(7) The disallowance of a deduction of $8,305.10, which it is alleged was a loss sustained upon 45 contracts in the United Home Builders of America.

(8) The disallowance of a deduction of $16,453.95, being the amount of a loss which it is alleged resulted in 1922 from an investment in the Community Mausoleum.

### FINDINGS OF FACT.

The petitioners are residents of Dallas, Tex. Prior to January 24, 1922, the petitioner, Arthur A. Cocke, had an interest—the nature of which can not be determined from the record—in the United Home Builders of America, an association operating under the laws of the State of Missouri. He was, at the same time, one of the managing trustees of the association. The association had been seeking to purchase a building within which to conduct its business. The managing trustees (the petitioner, Arthur A. Cocke, and another whose name is not material) found that one Sachs, of St. Louis, was offering for sale a building in that city. The managing trustees, on behalf of the association, purchased the building from Sachs for $200,000.

On January 24, 1922, that being the same time as, or shortly after, the purchase of the building above referred to, the petitioner, Arthur A. Cocke, sold his interest in the association to Sachs for $100,000.

Certain persons interested in the association—whether as owners of an actual interest or as contract holders, does not appear—brought suit against the petitioner in the courts of Dallas County, Texas, alleging that the association did not have in its expense fund an amount sufficient to pay the purchase price of the building, and that there had been expended in the purchase thereof funds which were the property of the contract holders. It was alleged that the amount received by the petitioner herein did not rightfully belong to him; that the interest sold could not be disposed of by him as trustee, to his own benefit; that the sale inured to the benefit of all contract members and that the $200,000 paid for the building came out of the loan or trust fund; and that therefore the $100,000 received by the petitioner herein was impressed with a trust and could be followed as such fund by the interested parties. A writ of attachment and garnishment was issued and there was attached thereunder, among other things, the petitioner's bank account in which had been deposited the $100,000 received from Sachs.

The petitioner filed his answer in the suit and a trial was had at which the jury disagreed. The suit was still pending at the date of the hearing of this proceeding and the petitioner herein still contends that the $100,000 is his and that it is not impressed with a trust.

During the taxable year the petitioner owned or held 116½ contracts in the association above referred to. Of these contracts 71½ were pledged to a bank as collateral security for a loan. These contracts had a cash surrender value. Some time prior to the 25th day of December, 1922, the petitioner went to the office of the association and arranged with it for the surrender of the contracts and the payment to the bank of the surrender value thereof. The bank surrendered the contracts and received their surrender value, but we can not determine from the record how or when this was done. The evidence does not disclose the costs of the contracts or the amount received on their surrender.

The remainder of the contracts were not surrendered and they became involved in the receivership proceeding and are in that condition today. The petitioner charged " them " off as a loss.

One Charles H. White organized and put into operation what was known as the White Banking System. The principal feature of its business was what were described as " cooperative loans." The petitioner invested $5,707.30 in this organization in the year 1922— whether as a stockholder or in some other capacity, does not appear. White maintained his office in the offices of the petitioners. During the taxable year some disagreement arose between the petitioner, Arthur A. Cocke, and White as to the operation of the banking business and the petitioners refused to allow White to office with them. The amount of the investment in the White Banking System was charged off as a loss. On December 26, 1923, White gave the petitioner his note for $4,850, which note is still unpaid. The petitioner, during the year 1922 and a part of the year 1923, was one of the trustees of the White Banking System.

OPINION.

GREEN: We are convinced that the petitioner's sale to Sachs was not an advantageous one, but we are equally convinced that he derived a gain thereon and that that gain was properly included in gross income. The payment was deposited in the petitioner's bank account and the proceeds thereof lay for thirty days unincumbered by either attachment or garnishment. The plaintiffs in that suit may establish a trust—and as to this we express no opinion—or they may establish a liability on the part of the petitioner herein which will be satisfied by an execution levied upon the funds garnisheed. This disposes of the first allegation of error.

In regard to the second allegation of error, it appears that the petitioner, shortly before Christmas of 1922, made a trip to St. Louis and there arranged for the payment to the bank of the cash surrender value of the 71½ contracts belonging to him and held by it as collateral. The evidence is that the bank did surrender the contracts

and receive their value, but whether in 1922 or 1923 we can not ascertain, and therefore affirm the Commissioner. Likewise, the cost of the contracts and the amount received on their surrender is not in evidence.

The White Banking System, another cooperative loan organization, had interested the petitioner to the extent of investing $5,707.30 therein and becoming a trustee thereof. White officed with the petitioners. A disagreement arose, friendship ceased, and White moved his office elsewhere. The petitioners were dissatisfied with White's management of the business, of which one of them was a trustee. Some time in 1923 White gave the petitioner a note for $4,850. The proof of loss is lacking and we must affirm the Commissioner.

The proof, if any, in support of the remaining allegations of error, is wholly inadequate and makes their further consideration unnecessary.

> *Judgment will be entered for the Commissioner.*

KORNER, LITTLETON, and MILLIKEN not participating.